IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GALAXY GAMING OF OREGON, LLC,                    Civil No. 07-1275-AA
a New Mexico limited liability                      OPINION AND ORDER
company; GALAXY GAMING, LLC, a
Nevada limited liability company;
GALAXY GAMING, INC., a Nevada
Corporation, et al.; GALAXY GAMING
OF ARIZONA, LLC, a New Mexico limited
liability company; GALAXY GAMING OF
BRITISH COLUMBIA, LLC, a New Mexico
limited liability company; GALAXY
GAMING OF CALIFORNIA, LLC, a New
Mexico limited liability company; GALAXY
GAMING OF CONNECTICUT, LLC, a New
Mexico limited liability company; GALAXY
GAMING OF ILLINOIS, LLC, a New Mexico
limited liability company; GALAXY
GAMING OF INDIANA, LLC, a New
Mexico limited liability company; GALAXY
GAMING OF IOWA, LLC, a New Mexico
limited liability company; GALAXY
GAMING OF KANSAS, LLC, a New Mexico
limited liability company; GALAXY
GAMING OF MANITOBA, LLC, a New
Mexico limited liability company; GALAXY
GAMING OF MICHIGAN, LLC, a New
Mexico limited liability company; GALAXY
GAMING OF MISSISSIPPI, LLC, a New
Mexico limited liability company; GALAXY
GAMING OF MISSOURI, LLC, a New
Mexico limited liability company; GALAXY

Page 1 - OPINION AND ORDER

GAMING OF NEVADA, LLC, a Nevada
limited liability company; GALAXY
GAMING OF NEW JERSEY, LLC, a New
Mexico limited liability company; GALAXY
GAMING OF NEW YORK, LLC, a New
Mexico limited liability company; GALAXY
GAMING OF NORTH DAKOTA, LLC, a
New Mexico limited liability company;
GALAXY GAMING OF NOVA SCOTIA,
LLC, a New Mexico limited liability
company; GALAXY GAMING OF
OKLAHOMA, LLC, a New Mexico limited
liability company; GALAXY GAMING OF
ONTARIO, LLC, a New Mexico limited
liability company; GALAXY GAMING OF
SOUTH DAKOTA, LLC, a New Mexico
limited liability company; GALAXY
GAMING OF WASHINGTON, LLC, a New
Mexico limited liability company; GALAXY
GAMING OF WISCONSIN, LLC, a New
Mexico limited liability company;
ROCKLAND RIDGE CORPORATION, a
Nevada corporation; ALAMEDA
ENTERPRISES, LLC, a New Mexico limited
liability company; PRIMETIME PLAYER
MANAGEMENT, LLC, a Florida limited
liability company; ROBERT B. SAUCIER;
THE ALIXANDRA SAUCIER
REGULATORY TRUST, a Nevada
spendthrift trust; JEFFERY J. WHITEHEAD,
AS TRUSTEE OF THE ALIXANDRA
SAUCIER REGULATORY TRUST; and
ALIXANDRA J. SAUCIER,

        Plaintiffs,

    vs.

CHARLES BURDICK, ALFRED C. BATHKE,
and DOES I-C,

        Defendants.

---

John Wiener
429 Court Street NE
Salem, OR 97301
Richard E. Hawkins

Page 2 - OPINION AND ORDER

6980 O'Bannon Drive
Las Vegas, NV 89117
     Attorneys for Plaintiffs

Kenneth C. Crowley
David L. Kramer
Department of Justice
1162 Court Street NE,
Salem, OR 97301
     Attorneys for Defendant Charles Burdick

C. Robert Steringer
Harrang Long Gary Rudnick P.C.
1001 SW Fifth Ave., 16 Floor
Portland, OR 97204
     Attorney for Defendant Alfred C. Bathke


AIKEN, Judge:

     Pending before the court are Alfred C. Bathke ("Bathke") and

Charles Burdick's ("Burdick") ("defendants") motions to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6).  On March 4, 2007 the court

held telephone oral argument on these motions.  Defendants'

motions are granted in part and denied in part.

     In this action, plaintiffs Galaxy Gaming of Oregon ("GGO"),

a New Mexico limited liability company, and thirty-one other

plaintiffs filed several claims under federal and state law

against defendants Bathke and Burdick, former employees of the

Oregon State Police ("OSP"), a number of other unidentified

residents of the State of Oregon, attorneys or other agents and

officers of the Attorney General of the State of Oregon, and

persons or entities of unknown residency.

     Plaintiffs' claims are as follows: (1) deprivation of

plaintiffs' right to honest government services in violation of
42 U.S.C. § 1983; (2) due process violation, 42 U.S.C. § 1983;
(3) deprivation of plaintiffs' rights by creating a class which
was treated differently than others similarly situated; (4) equal
protection of law;  (5) interference with prospective advantage;
(6) interference with contract; and (7) fraud.

Defendant Bathke initially filed five Fed. R. Civ. P. Rule
12 motions (hereafter, motions 1 through 5 with motion 2 being an
alternative to motion 1).  Defendant Burdick joins in these
motions and offers two additional motions (motions 6 and 7).
Plaintiffs concede defense motions three, four, and seven.
Although plaintiffs' did not explicitly concede motion seven during
oral argument, or argue against it, plaintiffs did concede motion
seven should be granted in their memorandum of opposition subject
to the preservation of plaintiffs' filing date.  I note that
Defendant Bathke has not joined Defendant Burdick's sixth and
seventh motions; however, since plaintiff conceded motion four,
Defendant Bathke is not exposed to plaintiff's fifth, sixth, and
seventh causes of action.  Therefore, plaintiffs' claims four,
five, six, and seven are dismissed.  Defendants' first, second
(alternative to motion 1) and fifth motions, and defendant
Burdick's sixth motion remain pending before this court.

Defendants' first motion to dismiss asserts that plaintiffs'
first claim fails to allege deprivation of a right, as secured by
the U.S. Constitution or federal law.  Defendants' second motion

Page 4 - OPINION AND ORDER

moves in the alternative to make plaintiffs' first claim more
definite and certain by identifying a specific constitutional
provision or federal statute.  Defendants' fifth motion argues
that all claims made by plaintiffs other than Galaxy Gaming of
Oregon, LLC ("GGO"), Galaxy Gaming, LLC ("GGLLC"), Galaxy Gaming,
Inc. ("GGI"), and Robert Saucier ("remaining plaintiffs") should
be dismissed for failure to state a claim.

Finally, defendant Burdick moves pursuant to his sixth
motion that plaintiffs' second and fourth causes of action (due
process and equal protection) should be dismissed because they
fail to state claims.  For the reasons set forth below,
defendants' motions are granted in part and denied in part.

<u>BACKGROUND</u>

Galaxy Gaming, LLC, a Nevada limited liability company
("GGLLC"), licensed intellectual property consisting of various
casino games, invented by GGLLC manager Robert Saucier
("Saucier"), to other companies to sublicense to casinos.  GGLLC
issued a license to Galaxy Gaming of Oregon, LLC ("GGO"), which
entitled it to sublicense its intellectual property in the State
of Oregon ("state").  In early 2002, GGO entered into an
agreement, allegedly procured through the efforts of Rockland
Ridge Corporation ("Rockland"), with the Grande Ronde Tribe
("tribe") to sublicense intellectual property to the tribe.  The
tribe subsequently issued a "Letter of Intent" to do business

with GGO.

The other specified Galaxy plaintiffs ("the regionals") are all limited liability companies of which GGLLC is the sole member and manager.  The regionals license intellectual property for casino table games and side bets from GGLLC, which they in turn license to the casinos.  Each regional company of GGLLC sells only to casinos in its respective state, and is licensed according to those state laws.  Gross revenue for each regional is distributed as licensing fees to GGLLC, management fees to GGI, as well as spent on sales commissions and miscellaneous expenses.  Galaxy Gaming, Inc. ("GGI"), a Nevada corporation, created in December 2006, is a successor entity of GGLLC and is the real party in interest for portions earned by GGLLC.

On March 21, 2002, GGO filed an application for a finding of suitability with the Oregon State Police ("OSP") pursuant to the requirements of the Tribal-State Compact for Regulation of Class III Gaming between the tribe and the state.  OSP is responsible for conducting background investigations of gaming vendors who have applied for licensing by a tribe to do business in its tribal casino.  OSP investigates those vendors, issues reports of these investigations, and makes licensing recommendations.  The Tribal Gaming Commission considering the licensing application then makes an independent determination whether the vendor qualifies to do business with the tribe.

Page 6 - OPINION AND ORDER

The Tribal-State Compact requires the investigation report conclude within 60 days from its receipt of the completed application and deposit, unless an extension request is granted by the tribe in writing.  Plaintiffs' allege that OSP's investigation lasted approximately three years.  Originally, OSP estimated the investigation cost to be $2,500, which was to be included with GGO's application.  Plaintiffs allege they paid an additional $42,000 for the investigation based on additional monetary requests made by OSP.

Further, plaintiffs argue that they submitted additional application forms at the request of OSP by plaintiffs Rockland, Gary Saul ("Saul"), the sole stockholder and officer of Rockland, and Alixandra Saucier ("Alix"), the daughter of Saucier. Defendants argue that these various application forms are not the focus of this lawsuit but rather the specific application submitted by GGO.  Defendants argue that OSP has completed that investigation.

Plaintiffs allege that defendants treated their application differently than other similarly situated applicants.  Further, plaintiffs allege that defendants improperly billed the remainder of the investigation to a "training" account paid for by the Oregon tribes in an effort to cover up their prior wrongdoing. Plaintiffs argue that they have suffered extensive damages as a consequence of defendants' disregard for deprivation of their

civil rights.

In addition, the regionals and other plaintiffs allege that they are entitled to commissions from future Galaxy contracts. The regionals allege that they would have profited from licensing contracts with Galaxy.  The regionals argue that additional contracts would have generated additional revenues for GGLLC, GGI, and the other named plaintiffs.  Defendants argue that these other plaintiffs do not have any definitive claim in this action because they are not parties to the license application and related investigation of GGO.

STANDARDS

Under Fed. R. Civ. P. 12(b)(6), once a claim has been stated adequately, it may be supported by "showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1960 (2007).  See also, Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984), cert. denied, 470 U.S. 1052 (1985).  For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiffs, and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983).

DISCUSSION

1. Federal Law Claims Against Defendants for Purposes of 42 U.S.C. § 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must

allege that "(1) the defendant was acting under color of state
law at the time the acts complained of were committed, and that
(2) the defendant deprived plaintiff of a right, privilege, or
immunity secured by the Constitution or laws of the United
States." 42 U.S.C. § 1983; Briley v. California, 564 F.2d 849,
853 (9th Cir. 1977). A plaintiff may bring a § 1983 claim
pursuant to a federal statute only if the statute confers
individually enforceable rights onto a class of beneficiaries to
which the plaintiff belongs. City of Rancho Verdes, Cal. v.
Abrams, 544 U.S. 113, 120 (2005). Further, to seek redress
pursuant to § 1983, a plaintiff must assert a federal right was
violated, and not merely a violation of federal law. Gonzaga
Univ. v. Doe, 536 U.S. 273, 282-85 (2002).

The court agrees that plaintiffs fail to allege particular
facts or a legal theory to state a claim for a federal right to
honest government services. Plaintiffs allege that the right to
honest government services is based on 18 U.S.C. § 1341, the
criminal mail fraud statute, which states, in part:

> Whoever, having devised or intending to devise any
> scheme or artifice to defraud, or for obtaining money
> or property by means of false or fraudulent pretenses,
> representations, or promises, or to sell, dispose of,
> loan, exchange, alter, give away, distribute, supply,
> or furnish or procure for unlawful use any counterfeit
> or spurious coin, obligation, security, or other
> article, or anything represented to be or intimated or
> held out to be such counterfeit or spurious article,
> for the purpose of executing such scheme or artifice or
> attempting so to do, places in any post office or
> authorized depository for mail matter, any matter or

thing whatever to be sent or delivered by the Postal
Service ... shall be fined under this title or
imprisoned not more than 20 years, or both.

Plaintiffs argue that 18 U.S.C. § 1341 does not necessarily
provide a constitutional right to honest government services, but
supports a criminal conviction for the violation of such rights.
I agree however, with defendants assertion that the right to
honest government services is not guaranteed by 18 U.S.C. § 1341
explicitly nor as an implied general right.  The mail fraud
statute does not confer individually enforceable rights onto a
class of beneficiaries to which the plaintiffs belong.  Although
the right to honest government services is recognized pursuant to
18 U.S.C. § 1346, plaintiffs do not allege that defendants used
the mail to further their scheme.

Plaintiffs rely on U.S. v. Cross, 128 F.3d 145 (3d Cir.
1997), which found that defendants violated both 18 U.S.C. § 241,
for interfering with fair and impartial trials, and 18 U.S.C. §§
371 and 1341, for mail fraud.  Again, Cross examines the right to
honest government services within the context of mail fraud.
That is not the situation at bar.

Further, a number of federal courts have held that 18 U.S.C.
§ 1341 does not create an implied private right, other than in
the context of the Racketeer Influenced and Corrupt Organizations
Act (RICO).  See, e.g., Ryan v. Ohio Edison Co., 611 F.2d 1170,
1178 (6th Cir. 1979); Bell v. Health-Mor, Inc., 549 F.2d 342, 346

(5th Cir. 1977).  Although "it not necessary that a complaint
drawn under section 1983 set out the particular portion of the
Constitution or law securing the right of which plaintiff has
been deprived," Keniston v. Roberts, 717 F.2d 1295, 1299 (9th
Cir. 1983), this court can not discern that such rights to honest
government services exist pursuant to the Constitution or federal
law under the facts alleged by plaintiffs.

Plaintiffs have failed to allege any federal law violations
that would support a claim under 42 U.S.C. § 1983.  Therefore,
defendants' first motion to dismiss is granted and  plaintiffs'
first cause of action is dismissed.  Moreover, defendants' second
motion to make more definite and certain is denied as moot.

2. Due Process Claims

Defendants' sixth motion moves to dismiss plaintiffs' second
cause of action (due process claim) for failure to state a claim.
Defendants argue that plaintiffs' procedural or substantive due
process claim fails because they have no constitutional right in
their application for a finding of suitability.  Further,
defendants argue that plaintiffs are unable to show a property
interest protected by the Constitution.  Plaintiffs contend they
have a protected interest in the investigation itself as opposed
to an absolute right to a finding of suitability.

A plaintiff must prove the following three elements to
assert a successful 42 U.S.C. § 1983 claim based upon a

deprivation of liberty or property without due process: "a
liberty or property interest protected by the Constitution; (2)
deprivation of the interest by the government; [and] (3) lack of
process." Portman v. County of Santa Clara, 995 F.2d 898, 904
(9th Cir. 1993).  The property interests must be defined by state
law, not the due process clause itself.  Id.

In addition, a "person must clearly have more than an
abstract need or desire" for a property interest in a benefit.
Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577
(1972).  The person must have a legitimate claim of entitlement
to the government benefit, rather than just a unilateral
expectation of it.  Id.  Where the regulations establishing
entitlement to the benefit are mandatory in nature, and not
discretionary, applicants have a property interest protectible
under the Due Process Clause.  A number of courts have ruled on
whether a property interest exists based on the nature of the
licensing, application, or certificate decision.  See, e.g.,
Emmert Indus. Corp. v. City of Milwaukie, 450 F. Supp. 2d 1164,
1175-77 (D. Or. 2006); Thornton v. City of St. Helens, 425 F.3d
1158, 1164-65 (9th Cir. 2005); Foss v. Nat'l Marine Fisheries
Serv., 161 F.3d 584, 588 (9th Cir. 1998); Wedges/Ledges of Cal.,
Inc. v. City of Phoenix, 24 F.3d 56, 62-64 (9th Cir. 1994);
Jacobson v. Hannifin, 627 F.2d 177, 179-80 (9th Cir. 1980).

Plaintiffs argue that they have a property interest in a

proper investigation to determine whether GGO is allowed to enter
into an agreement with the Grande Ronde Tribe to sublicense
intellectual property to the tribe.  This court need not decide
whether the Tribal-State Compact provisions and the Due Process
Clause create such a property interest.  It is necessary only at
this time to determine whether the "possibility of such a
property interest states a colorable claim for relief under
section 1983 that is not 'wholly insubstantial and frivolous.'"
Keniston v. Roberts, 717 F.2d 1295, 1299 (9th Cir. 1983).

     It is unclear whether the Tribal-State Compact provides OSP
with some discretion in its decision-making or outlines mandatory
procedures that OSP must abide by when recommending approval or
denial of an licensing application.  Furthermore, it is unclear
how much influence OSP's recommendations have on the Tribal
Gaming Commission's final decision.  Therefore, it is reasonable
to conclude that plaintiffs' allegations of insufficient process
are not wholly insubstantial and frivolous.

     Defendants also argue that procedural due process claims
require that the plaintiff exhaust all administrative remedies
before claiming that the state failed to provide due process.
Plaintiffs assert that exhaustion of administrative remedies is
not a pleading requirement within the context of a due process
claim.  Alternatively, plaintiffs state that Oregon law does not
provide an administrative remedy for tribal-compact

Page 13 - OPINION AND ORDER

investigations.

It is undetermined whether OSP has decided to recommend to the Tribal Gaming Commission to deny GGO's licensing application. Plaintiffs state that "[d]efendants determined <u>at a premature stage</u> that [p]laintiffs would not receive a finding of suitability." Complaint, ¶ 35 (emphasis added). Defendants assert that OSP has completed its investigation. Memo. in Supp. of D. Burdick's Motions to Dismiss, p. 4. As such, it is unclear whether OSP has made a final and definite recommendation to the Tribal Gaming Commission. It is also undetermined whether the Tribal Gaming Commission has made a final decision to deny GGO's application.

Therefore, defendants' sixth motion to dismiss plaintiffs' second claim for due process pursuant to Fed. R. Civ. P. Rule 12(b)(6) is denied.

3. <u>Equal Protection Claims</u>

Defendant Burdick moves in his sixth motion for dismissal of plaintiffs' fourth cause of action, violation of equal protection. The court notes that plaintiffs previously conceded defendants' third motion moving to strike plaintiffs' fourth cause of action as redundant to plaintiffs' third cause of action. Memo. in Opp. to Def. Bathke's Motion to Dismiss, p. 5. Therefore, defendants' motion to dismiss plaintiff's fourth cause of action is granted.

Page 14 - OPINION AND ORDER

I noted, however, that defendants intended to move to dismiss plaintiffs' third cause of action.  Defendants eventually argue that plaintiffs' third cause of action, an equal protection claim, should be dismissed.  Defendants provide a lengthy argument supporting their motion to dismiss.  However, as a result of defendant's mistake, plaintiffs did not reply to defendant's argument in their brief.  During oral argument, however, plaintiffs argued that they did not have an opportunity to "rehabilitate" their application, based on handbook guidelines and standards requiring such an opportunity, like other applicants have been previously allowed.  Therefore, plaintiffs are granted an opportunity to respond to defendants' arguments that plaintiffs' equal protection claims should be dismissed.  A response must be filed by March 31, 2008.

4. Remaining Plaintiffs' Claims Against Defendants Pursuant to 42 U.S.C. § 1983.

Defendants move to dismiss all claims made by the remaining twenty-eight plaintiffs for failure to state a claim.  Remaining plaintiffs allege that they are seeking "foreseeable economic damages inflicted upon them by the wrongful acts committed against the first four plaintiffs."  Pl. Opp. Memo., p. 5. Remaining plaintiffs, primarily the regionals, argue that they are entitled to commissions they would have received from contracts between them and GGI.  Remaining plaintiffs assert a

cause of action based on the U.S. Constitution's guarantee of
"economic rights." Id.; Amended Complaint, ¶¶ 36-39, 51-52.
Defendants argue that these remaining plaintiffs fail to allege
any facts to show that defendants' actions affected any of their
rights, particularly their involvement in the suitability
investigation by OSP.

Courts have allowed parties to bring actions pursuant to
federal law and the U.S. Constitution to protect their economic
rights under 42 U.S.C. § 1983. See, e.g., Dennis v. Higgins, 498
U.S. 439 (1991) (suits for violations of the commerce clause may
be brought under § 1983); State of Maine v. Thiboutot, 448 U.S. 1
(1980) (respondents are entitled to attorney's fees pursuant to
the Civil Rights Attorney's Fees Awards Act of 42 U.S.C. § 1988,
arising under 42 U.S.C. § 1983 for deprivation of their rights
under the Social Security Act, 42 U.S.C. § 601 et seq.). In
addition, parties have enforced economic rights in general under
the commerce, contract, takings, supremacy, and interstate
privileges and immunities clause.

Although plaintiffs do not cite to a particular U.S.
Constitutional amendment, this court discerns that economic
rights to the contracts between "the regionals" and GGI may exist
pursuant to the Constitution or federal law under the facts
alleged by plaintiffs. There is a definite business relationship
between the four main plaintiffs and the remaining plaintiffs. As

Page 16 - OPINION AND ORDER

such, there may have been some type of financial impact on the
remaining plaintiffs if the investigation was improperly conducted.

   Thus, remaining plaintiffs have sufficient evidence to survive a
12(b)(6) motion based on the U.S. Constitution's guarantee of
economic rights.

     Therefore, defendants' fifth motion to dismiss pursuant to
Fed. R. Civ. P. Rule 12(b)(6) is denied as to remaining
plaintiffs' claims.

<u>CONCLUSION</u>

     Defendants' motions for dismissal (docs. 11, 15) are granted
in part and denied in part as follows: defendants' first motion
to dismiss plaintiffs' first claim (docs. 11, 15) is granted and
that claim is dismissed; further, defendants' alternative motion,
motion two, to make more definite and certain (docs. 11, 15) is
denied as moot; defendant Burdick's sixth motion to dismiss
plaintiffs' fourth claim (doc. 15) is also granted as conceded by
plaintiffs; defendant Burdick's sixth motion to dismiss
plaintiffs' second claim (doc. 15) is denied; and defendants'
fifth motion to dismiss all "remaining plaintiffs'" claim (docs.
11, 15) is denied.   Remaining at issue in this lawsuit are: (1)
plaintiffs' second claim alleging a due process violation; and
(2) plaintiffs' third claim alleging an equal protection
violation.   Plaintiffs have an opportunity to respond to
defendants' arguments to dismiss plaintiff's equal protection

claim.  This response must be filed by March 31, 2008.

IT IS SO ORDERED.

        Dated this  13  day of March 2008.

                                    /s/ Ann Aiken
                                   Ann Aiken
                       United States District Judge